George J. Balbach, J.
Defendant moves to suppress a pretrial identification.
A Wade hearing was held on August 5, 1976 and the court finds the following:
On December 18, 1975 at approximately 6:30 in the evening a Queens resident, Charles Pitchford, drove his car into a Springfield Boulevard gas station in order to put some air into his tires. As Mr. Pitchford stopped by the air hose, he noticed nearby a black and white station wagon which was being pushed by three young black men.
Suddenly, one of these men walked over and placed a gun at his head, forcing him back into his car. Two of the men then entered the back seat and the third sat next to him in the front. One of the rear passengers held the gun to the complainant’s head and directed him to drive to Merrick, Long Island. The witness did so.
After a short while, the men ordered the complainant to stop and the armed man directed his front seat accomplice to search him. The passenger did so and took a small amount of currency from Mr. Pitchford’s person. The incident took approximately 15 minutes and was immediately reported to the police.
A detective, George Ransom of the 113th Precinct, was assigned to investigate the case. On January 13, 1976, in the course of his investigation, the detective had occasion to visit the witness at his residence. The officer, during their conversation, produced a single photograph containing pictures of five persons; each person was numbered. The detective inquired if the complainant recognized anybody in the photo. Mr. Pitch-ford pointed to the defendant in this action who bore the numeral 5, and identified his picture.
Testimony indicated that this photograph depicted a lineup held at the 112th Precinct and at which the witness failed to appear. Detective Ransom testified that he had scheduled a routine lineup and advised the witness of this fact. On the scheduled date the witness, either through fear or confusion, *776 failed to appear at the station house. Thereafter, a picture was taken of this lineup and it was this photograph that the witness identified. The lineup photo depicted five individuals who were placed at random with the defendant in the fifth position. Apparently, he consented to stand in this position of his own free will and was not directed to any particular spot. The photo contained names on the rear of the picture but testimony was given to the effect that only the front of the picture was shown to the witness.
At issue here is the validity of the photo identification. The defendant challenges such identification and contends (1) that the procedure of showing a lineup photograph as a substitute for the actual lineup itself violates due process, and (2) that the photograph itself was so improper as to be unduly suggestive.
Defendant’s first point deals with the legality of substituting a picture of a lineup for the actual lineup itself. The form of identification has been termed a "Lawrence Lineup” (see Sobel, Eye-Witness Identification, § 48, p 92) and has been challenged in other jurisdictions as denying due process. The leading case is People v Lawrence (4 Cal 3d 273) in which a suspect, already in custody, was photographed in a lineup. A witness was then called to the police station and instead of viewing the corporeal lineup was shown three color photographs of the lineup. The California defendant immediately challenged this procedure alleging: (1) that a photo identification was the equivalent of a corporeal identification and réquired all the Wade constitutional protections, including the right to counsel; and (2) that the police action was inherently unfair in that it substituted a less reliable photo identification for the more reliable lineup procedure.
The California Supreme Court, by a four to three vote, held that the procedure violated no constitutional standards and stated (People v Lawrence, supra, p 277): "Although it appears that better police procedures could well have been employed by conducting a true lineup with counsel for defendant and the witness present (and it further appears that ample time and opportunity were available to present such a lineup) the failure to take such action is not the crucial factor in the determination of the case at bench. We are involved only with a photograph of a simulated lineup and we see no distinction in this respect between such identifications and identifications made from mug shots or other types of photographic displays. *777 (See United States v. Collins (4th Cir. 1969) 416 F.2d 696; Commonwealth v. Whiting (1970) 439 Pa. 205 [266 A.2d 738, 740, fn. 3].)”
While our New York courts have not yet ruled on the "Lawrence Lineup”, it would appear that the basic decision of the California court is sound and should be followed in this State. This conclusion is reached by an analysis of two Supreme Court cases. The first is the pioneering Simmons v United States (390 US 377) in which our highest court considered the issue of photo identification for the first time. The court there clearly realized the possibility of photo abuse but simply laid down the broad guidelines that unless such photo identification was so suggestive as to actually be misleading, it would not be suppressed. The Lawrence court was familiar with the Simmons decision and based its reasoning in part on this case.
The second case, and by far the most important, was United States v Ash (413 US 300) in which the Supreme Court refused to extend the protection of Wade to photographic identification. The court in that case, among other issues, clearly considered the dual contentions raised in the California case, that is, right to counsel and a "reliability” test.
As regards the first issue, the court was clear and direct in that it held (p 321) "that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government”.
The second point, dealing with the substitution of a less reliable procedure of identification in place of the more reliable, was also discussed by that court. It first clearly recognized the problem — namely, that the danger of substituting a photographic identification for a lineup, did exist — by observing (United States v Ash, supra, pp 319-320, n 14), "a variant of this argument is that the photographic identifications may be used to circumvent the need for counsel at line-up”. However, the court pointed out that (p 320) "Pretrial photographic identifications * * * are hardly unique in offering possibilities for the actions of the prosecutor unfairly to prejudice the accused” and reasoned that the "primary safeguard against abuses of this kind is the ethical responsibility of the prosecutor”. The conclusion reached by that court was (p 321) "We are not persuaded that the risks inherent in photographic displays are so pernicious that an extraordinary system of safeguards is required.”
*778 In effect, the Ash decision refused to grant Wade protection to photographic identification. This in turn meant that the only constitutional right a defendant could claim was the Simmons relief, to wit: a "pretrial identification by photograph will be set aside * * * only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.” (Simmons v United States, 390 US 377, 384, supra.)
In light then, of the fact that the sole guideline established by the Supreme Court in dealing with photo identification is the "suggestiveness test”, there is no merit to defendant’s view that the police must also use the most reliable form of identification available once a man is in custody. Defendant by this view would arbitrarily lay down a second test to determine the validity of photo identification, namely that as an investigation matures, the police are under an obligation to progressively utilize more reliable forms of identification. There is, of course, a certain amount of logic in such a view and a "reliability test” has been advocated by at least one of our textbook writers (See Sobel, Eye-Witness Identification, pp 78-79, §§ 45-46). The author of that work suggests (pp 78-79) that photo identification procedures are normally employed by the police at three different levels ("the investigation stage, the custody stage and the defendant’s stage”), and feels once a suspect is under police custody (p 79), "there is simply never any justification for employing photo identification procedures, since a corporeal line-up is available”. However appealing such argument is, there is no authority to justify such a doctrine. The Supreme Court has not laid down this requirement and the New York State courts have not yet expanded the "suggestiveness test”. (Cf. People v Joyiens, 39 NY2d 197, 203, 204.)
Therefore, in view of the fact that the Supreme Court refused (1) to grant certiorari in the Lawrence case (407 US 909), and (2) recognized the two California issues raised in the Ash case and (3) still refused to modify the Simmons guideline by a "reliability” test, it follows that the substitution of a photograph of a lineup for the lineup itself violates no constitutional standards. If this be the case, then the conclusion reached in California, being based on constitutional issues, would be equally valid in New York and a "Lawrence Lineup” is permissible.
It might further, in this connection, be pointed out that the *779 Supreme Court did indicate that (United States v Ash, 413 US 300, 320, n 16 supra) "Throughout a criminal prosecution the prosecutor’s ethical responsibility extends, of course, to supervision of any continuing investigation of the case. By proscribing procedures to be used by his agents and by screening the evidence before trial with a view to eliminating unreliable identifications, the prosecutor is able to minimize abuses in photographic displays.”
From this it would appear that while a prosecutor is under no legal obligation to select one form of identification over another, he is at least under an ethical duty to use the most reliable identification procedure within his control.
In the case at bar the People have indicated that there was a reason for the procedure utilized, to wit, the reluctance of the witness, and the use of the lineup photograph was clearly not a subterfuge nor was it arbitrary.
This, then, leads to defendant’s second contention that the photo identification was so suggestive as to give rise to a very substantial likelihood of misidentification. Defendant here submits the fact that a single photograph was exhibited and that this limited viewing was prejudicial in that it implied that at least one of five men depicted, was the guilty party. Unfortunately, this is a risk inherent in any photo identification and if 20 photographs had been shown to the witness there still would be some implication that one of these men was connected with a crime. In this case the defendant had not shown that the risk was so prominent as to unduly influence the viewer. Of course, if the photograph contained only one picture or in some fashion segregated one person to the extent that it became a photo confrontation, it would be clearly impermissible. (Cf. People v Harrington, 29 NY2d 498.)
Defendant next cites discrepancies in the witness’ testimony indicating that at one time the complainant stated that the defendant possessed a shotgun and then later changed his testimony. Also, there was conflicting testimony as regards an identification of a second participant in the crime. A review of the record indicates that there was some conflicting testimony on these issues, but such discrepancies bear on the weight to be accorded this evidence and not on its admissibility.
Therefore, based on the evidence presented, this court finds that the witness had ample opportunity to observe the person who allegedly sat next to him and took his property in the car. A time interval of some 15 minutes passed; there was *780 sufficient light in the car and the surrounding streets to have permitted identification. This court further finds that such identification was made and that it was based on the witness’ own observations and not suggested or tainted by the photo viewing.
Defendant’s application to suppress identification is consequently denied in all respects.