809 P.2d 525

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Lonnie Lee HAGGARD, Defendant–Appellant.**

**No. 17914.**

Court of Appeals of Idaho.

April 18, 1991.

**666**

Stewart A. Morris, Boise, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Lonnie Haggard appeals from his judgment of conviction, contending the district court erred in denying his motion to suppress the photo lineup from which he was identified by the victim. He also seeks review of his sentences, which he claims are excessive, and the later refusal by the district court to grant him relief under his Rule 35 motion. We affirm.

Haggard's criminal activities in the early morning hours of August 13, 1988, included the taking of cassette tapes from an unlocked, parked truck in Boise, Idaho, and the taking of a woman's purse as he exited her house. Haggard apparently broke into the woman's house, entered her bedroom and got into her bed. With the weight of his body, he pinned her down and pressed her arms against her chest, threatening that he was going to have sexual intercourse with her. He asked her questions, and she pleaded with him, trying to dissuade him. After a few minutes, he abandoned the attempted rape and left through a window.

The woman positively identified Haggard in a pretrial photo lineup and again in court. He was charged with two counts of burglary in the first degree, I.C. §§ 18–1401, 1402, and 1404; one count of battery with intent to rape, I.C. § 18–911; two counts of petit theft, I.C. 18–2403(1), 18–2407; and of being a persistent violator, I.C. § 19–2514. The photo lineup evidence of identification, which the defense sought to exclude by a motion to suppress, was admitted at trial, and the jury returned a verdict of guilty on all counts. On each felony count, Haggard received a twenty-five year sentence with a minimum fixed term of fifteen years, the sentences to be served concurrently. He also received 127 days for the petit thefts, the amount of days he had already served in jail before being sentenced.

I

■ It is Haggard's contention that the photo lineup composed by the police was flawed because of the placement of Haggard's photo in the lineup and because the other men pictured did not look enough like Haggard. As such, claims Haggard, the in-court identification was bolstered by suggestive pretrial identification. Haggard contends that the pretrial identification should have been suppressed.

■ The U.S. Supreme Court has addressed the issue of photographic identification.

[A conviction] based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Suggestiveness in an out-of-court photo lineup which creates the danger of misidentification has been held to be a denial of due process. *Id.* In examining the claimed violation, we must apply a totality of the circumstances test. *See State v. Morris,* 116 Idaho 834, 780 P.2d 156 (Ct.App.1989), *citing State v. Alger,* 115 Idaho 42, 44, 764 P.2d 119, 121 (Ct.App.1988).

On the very day of the assault, the victim met with police. She described the man who had intruded into her bedroom which was partially illuminated by a light in the carport adjacent to the house. From her description of the man, the police arrived at a composite drawing of her assailant. Not fully satisfied with the result, the victim agreed to an enhancement of the drawing by aid of a computer, producing a more acceptable likeness of the assailant. The second drawing resembled an individual whom the police knew to be Lonnie Haggard. A detective then assembled a photo lineup which included Haggard's picture. When the victim was shown the photos she readily identified Haggard as her assailant. The police then obtained a search warrant and searched Haggard's car and his home,

confronting him with evidence that placed him at the scene of the attempted rape and thefts. The police arrested Haggard.

Haggard maintains that the suggestiveness of the lineup arises because his picture was the first one in the montage. The photo lineup consisted of six photographs arranged in two rows of three on one sheet of paper. In other respects, the photos were indistinguishable in size and color, and ·they were all full face shots on a light-colored background.

The officer who showed the photographs to the victim testified that he had made no suggestions as to who might be the suspect, and did not otherwise influence the victim's selection. He also stated that the victim immediately picked out the photo of Haggard and identified him as the man who had assaulted her. The victim testified that the photo in the top left position stuck out in her mind, and she definitely recognized the man as her attacker. She also was able to point him out in court, although at trial he no longer looked scruffy and disheveled as he did in the photo and at the time of the incident.

The record before us belies Haggard's claims that the arrangement of the photos in the lineup and the manner in which the lineup was presented were impermissibly suggestive so as to risk misidentification. Therefore, in the absence of any unfairness or other impropriety in the presentation of the photo array, the procedure meets the required standard in a constitutional sense. *See Simmons v. United States, supra.* Under a totality test, we find that the circumstances described, either singly or in combination, did not render the photo lineup impermissibly suggestive. *See White v. State,* 187 Ga.App. 301, 370 S.E.2d 50 (1988); *State v. Medford,* 489 So.2d 957 (La.App.1986).

Haggard's second quarrel with the lineup procedure is that the other men pictured do not look sufficiently like him. Accordingly, he submits that the witness was prompted to select Haggard's picture. We find this argument to be unavailing. The photos are all of men of approximately the same age and race, light to medium hair color, and at least five of the men—including Haggard—are wearing mustaches.

■ We recognize that a lineup may be considered unduly suggestive if a witness' attention is focused on a defendant. *State v. Tate,* 454 So.2d 391 (La.App.1984); *see also State v. Guillot,* 353 So.2d 1005 (La. 1977); *State v. Clark,* 437 So.2d 879 (La. App.1983), *cert. denied,* 442 So.2d 460 (La. 1983). Any array composed of different individuals, however, must necessarily contain certain differences. *State v. Vaughn,* 199 Conn. 557, 508 A.2d 430 (1986), *cert. denied,* 479 U.S. 989, 107 S.Ct. 583, 93 L.Ed.2d 585 (1986). Dissimilarity in physical appearance alone is not sufficient to establish impermissible suggestiveness. *State v. Reasonover,* 700 S.W.2d 178 (Mo. App.E.D.1985). We hold that appellant's physical features were not so different as to make the lineup suggestive.

From the record, we can see that the trial court next considered the victim's opportunity to view the accused at the time of the crime, the victim's degree of attention, the certainty of the victim at the time of the identification, and the length of time between the crime and the identification. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Brown,* 27 Wash.App. 639, 620 P.2d 529 (1980). We also note that the victim's observations at the time of the crime and her recollection of the facial features and physical characteristics of her attacker were sufficient for her to come up with a likeness of him and to recognize him as the man pictured in photograph number one of the lineup. We can conclude that the witness' identification of Haggard from the photo lineup was reliable and was properly admitted at trial.

## II

■ The next issue raised by Haggard on appeal concerns a review of his sentence. The responsibility for sentencing is vested in the sound discretion of the trial judge. *State v. Osborn,* 104 Idaho 809, 663 P.2d 1111 (1983); *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show, under any reasonable view of the facts, that his sentence was excessive in light of the [goals of protection of society, deterrence, rehabilitation, or retribution].

*State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). If a sentence is within the statutory maximum, it will not be disturbed on appeal absent a clear abuse of discretion. *Id.* If the sentence is shown to be unreasonable upon the facts of the case, the sentence may be held to be an abuse of discretion. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982).

■ Haggard received a sentence of twenty-five years, with ten years indeterminate following a minimum period of confinement of fifteen years on each of the three felony counts. He was given credit against the fixed portion of the sentence for 127 days served prior to sentencing, which term was also the sentence for the petit theft charges. Ordinarily, each of the felonies, two first degree burglaries and battery with intent to commit rape, would carry a maximum penalty of not more than fifteen years. However, because the jury found Haggard guilty of being a persistent violator, the maximum permissible sentence for each of these felonies was extended to imprisonment for life. I.C. § 19–2514.

We have not been provided with a transcript of the sentencing hearing in Haggard's case. However, Haggard's presentence investigation report (PSI) is an exhibit in the case and provides us with Haggard's record of prior convictions of more than twelve burglaries, grand theft, and violations of juvenile and adult probation and parole. The PSI also reveals that Haggard is reputed to have confessed to over 100 burglaries in Pocatello. Viewing the sentence with regard to the *Toohill* criteria, we can say that Haggard's sentence

will afford society the protection and retribution it demands and will serve to punish Haggard for his disrespect of the law. We affirm the sentencing order of the district judge as being proper and within his discretion.

### III

■ Haggard's final claim on appeal is that the district court erred in refusing to reduce his sentence under I.C.R. 35. Haggard sought to have the fixed portion of his sentence reduced, and he contends that the court abused its discretion in not granting his motion.

■ The appellate court is governed by the same discretionary standard in reviewing a denial of a Rule 35 motion as is applied to sentence reviews. *See State v. Roach,* 112 Idaho 173, 730 P.2d 1093 (Ct. App.1986); *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). The motion essentially is a plea for leniency which may be granted if the original sentence was unduly severe. *State v. Lopez, supra.* "On appeal, we will determine whether the entire record, including any facts presented in connection with the motion, shows that the district court abused its discretion in failing to grant the leniency requested." *State v. Garcia,* 115 Idaho 559, 560, 768 P.2d 822, 823 (Ct.App.1989). Likewise, the same criteria are used on appeal of a Rule 35 motion as is used to test the reasonableness of a sentence. *State v. Clayton,* 112 Idaho 1110, 739 P.2d 409 (Ct.App.1987); *State v. Toohill, supra.*

Haggard supported his argument for leniency by presenting to the court below his record as a model prisoner, who has made efforts to rehabilitate himself, and by reiterating that he had stopped short of completing the rape and that he was remorseful for his crimes. However, given Haggard's history of criminal activity, the district court was entitled to be dubious that the reformation milestone had been reached. We are not persuaded, considering all of the circumstances, that Hag-

gard's sentence is greater than necessary to accomplish the objectives of sentencing and was therefore unreasonable. We uphold the discretionary decision of the sentencing judge to deny the Rule 35 motion. Accordingly, we affirm the judgment of conviction and sentence imposed by the district court.

WALTERS, C.J., and SILAK, J., concur.