898 P.2d 71

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven Lee HYDE, Defendant–Appellant.**

**No. 21010.**

Court of Appeals of Idaho.

June 8, 1995.

Petition for Review Denied July 26, 1995.

Susan E. Wiebe, Caldwell, for appellant.

Alan G. Lance, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent. Michael A. Henderson, argued.

PERRY, Judge.

A jury found Steven Lee Hyde guilty of ten counts of robbery. I.C. § 18–6501. Based on the evidence, the district court vacated one of the ten verdicts. Hyde was sentenced to nine concurrent unified terms of life imprisonment, with minimum periods of incarceration of twenty-five years. The district court ordered the sentences to also run concurrently with sentences Hyde received in a similar Ada County case. Hyde appeals from the judgments of conviction and sentences and from the denial of his I.C.R. 35 motion to reduce his sentences. We affirm.

### FACTS

On February 18, 1993, a man entered the Jehovah's Witnesses Kingdom Hall in Boise during evening services and robbed members of the congregation. The man then left Ada County and proceeded to the Jehovah's Witnesses Kingdom Hall in Nampa. Upon entering the Hall in Canyon County, the robber pulled a sawed-off shotgun out from beneath his coat and threatened to shoot anyone in the congregation who did not give him their money. After shouting his demands, using

profane language, the robber ordered a man in the congregation to collect the money into a bag. The robber left with the bag containing the money, without firing the gun.

Because the robberies were so close in time and carried out in similar fashions, law enforcement officers from both Ada and Canyon Counties suspected the same perpetrator had committed both crimes. Three days after the incidents, the officers assembled approximately seventy victims from both robberies into a room. The victims were each provided with a sheet of paper and asked to identify the perpetrator from five pictures that were displayed on the wall. Steven Lee Hyde was identified by the victims as the person who had committed both robberies.

The police determined that Hyde had left the state after the robberies. He was later apprehended in Oregon and returned to Idaho to answer to the Ada County charges and to ten counts of robbery filed in connection with the Canyon County incident. On June 25, 1993, Hyde entered not guilty pleas to all counts in the Canyon County case.

Prior to his trial on the Canyon County charges, a jury convicted Hyde of seventy-three counts of robbery in connection with the Ada County charges. With regard to the Ada County convictions, a presentence investigation (PSI) report was prepared. Based on this report, the Ada County court imposed concurrent sentences of life imprisonment, with minimum periods of confinement of twenty years.[1]

In the Canyon County proceedings, Hyde filed numerous motions, including a motion for change of venue, a motion to suppress identifications made from the photo lineup, and a motion to be unshackled during trial. The district court denied all of the motions. On the first day of trial, however, the district court ordered that one of Hyde's hands could be free during trial. On October 7, 1993, the jury rendered a verdict of guilty on all ten counts. The district court scheduled a sentencing hearing.

On the day of the sentencing hearing, Hyde moved for a continuance, requesting that the district court order the preparation of a psychological report. Hyde also objected to the district court's use of the Ada County PSI report and filed a motion for an updated PSI report. The motions were denied by the district court.

Before imposing sentence, the district court vacated one of the ten verdicts, then sentenced Hyde to twenty-five years to life on each of the nine remaining verdicts. The sentences were to run concurrently with each other and with the sentences related to the Ada County case. Hyde appealed from the judgments of conviction and sentences. Hyde then filed a motion to reduce his sentences pursuant to I.C.R. 35 and requested preparation of a progress report in support of his Rule 35 motion. The district court summarily denied Rule 35 relief, and Hyde filed an amended notice of appeal.

## ISSUES

Hyde raises several issues. He asserts that the district court erred in denying his pretrial motions to change venue, to suppress the photo lineup identifications and to be unshackled during trial. Hyde claims error in the admission of testimony regarding a long, green Army coat and a Panama hat which were allegedly worn by Hyde during the robbery. Hyde also challenges the district court's denial of his motion for an updated presentence report, the denial of his motion for a psychological examination, the length of his sentences, the denial of a progress report in support of his Rule 35 motion and the denial of his motion for reduction of sentences.

## ANALYSIS

### 1. MOTION FOR CHANGE OF VENUE

■ Hyde's motion for change of venue alleged that pretrial publicity had been extensive and continued up to the day of trial. Because of the numerous newspaper articles and television coverage of this case and the

---

1. The convictions and sentences from the Ada County case are not the subject of this appeal and are referenced only as they relate to the issues raised regarding the Canyon County appeal.

Boise robbery of which Hyde was convicted, Hyde asserted that juror impartiality had been adversely affected. Hyde asserts on appeal that it was error for the district court to deny the motion for change of venue.

■ Error cannot, however, be predicated on the mere existence of pretrial publicity concerning a criminal case. *State v. Winn*, 121 Idaho 850, 856, 828 P.2d 879, 885 (1992), *citing Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *State v. Needs*, 99 Idaho 883, 890, 591 P.2d 130, 137 (1979). The validity of a court's decision to try a case in a particular venue is tested by whether, in the totality of existing circumstances, juror exposure to pretrial publicity resulted in a trial that was not fundamentally fair. *Winn*, 121 Idaho at 856, 828 P.2d at 885.

In conjunction with the motion, Hyde's counsel attached copies of newspaper articles concerning reports of the Ada and Canyon County cases, Hyde's violent act directed at his Ada County public defender, his escape from the Ada County jail, and a planned escape from the Canyon County jail which was discovered and averted. At the voir dire, three of the potential jurors admitted that they had no knowledge of Hyde or of the crime he was alleged to have committed in Canyon County. Of the remaining fifty-two potential jurors, counsel moved to strike only two individuals for cause when they stated that they had already formed an opinion in the case based on news reports of the crime. One of defense counsel's challenges for cause was overruled by the district court, but that individual was not ultimately seated on the jury. Both the prosecution and the defense exercised all available peremptory challenges and expressed no dissatisfaction with the twelve jurors selected.

The district court considered the nature and content of the pretrial publicity as well as the potential jurors' familiarity with the news reports. The district court acknowledged that there had been a significant amount of publicity concerning Hyde. However, none of the potential jurors voiced any recollection of any particular broadcasts or printed articles. Upon review of the record, we conclude that Hyde "has failed to show

that the setting of the trial was inherently prejudicial or that the jury-selection process of which he complains permits an inference of actual prejudice." *Id., quoting Murphy v. Florida*, 421 U.S. at 803, 95 S.Ct. at 2038. *See also State v. Fee*, 124 Idaho 170, 175, 857 P.2d 649, 654 (Ct.App.1993); *State v. Hall*, 111 Idaho 827, 727 P.2d 1255 (Ct.App.1986). Accordingly, we hold that the district court did not abuse its discretion in denying Hyde's motion for change of venue.

## 2. MOTION TO SUPPRESS PHOTO LINEUP IDENTIFICATION

Hyde asserts that the photo lineup was unnecessarily suggestive because of too few photographs, differences in the brightness between his photo and the other photos, and inadequate safeguards used in conducting the lineup. He argues that because the identification procedure was so unduly prejudicial, the resulting identification from the lineup should have been suppressed.

■ The standard for evaluating challenges to photo lineup identifications is outlined in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The United States Supreme Court has ruled that it is a denial of due process for an out-of-court photo lineup to be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 384, 88 S.Ct. at 971; *State v. Kysar*, 116 Idaho 992, 783 P.2d 859 (1989). Such a claim of suggestiveness must be evaluated in light of the totality of the circumstances. *Simmons* at 383, 88 S.Ct. at 970–71; *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Only if we determine that the procedure was unnecessarily suggestive do we then inquire whether the resulting identifications were so tainted that they should have been excluded. *State v. Smith*, 116 Idaho 553, 556, 777 P.2d 1226, 1229 (Ct.App.1989), *citing Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■ Hyde maintains that the suggestiveness of the lineup was the result of an insufficient number of photographs being used. The photo lineup consisted of five faxed cop-

ies of photographs arranged in a row on a shelf against the wall. The photos were all full face shots of the same size and bordered by a two-inch black mat. Hyde contends that he was unfairly prejudiced because the small number of photographs increased his odds of being selected by the witnesses.

■ We are not aware of any constitutional requirement that a photo array be composed of a particular number to minimize the risk of misidentification. Moreover, inherent in the use of photo identification is the implication that one of the individuals in the photo lineup was connected with a crime. See People v. Davis, 88 Misc.2d 774, 388 N.Y.S.2d 816, 819 (1976). It has been held, however, that single photo showups are inherently suspect and generally not condoned. State v. Hoisington, 104 Idaho 153, 162, 657 P.2d 17, 26 (1983), citing Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 970–71, 19 L.Ed.2d 1247 (1968). See also Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); State v. Edwards, 109 Idaho 501, 708 P.2d 906 (Ct.App.1985).

It has been held that where the photographs had no distinguishing marks, a five-photo lineup was not procedurally suggestive. State v. Medford, 489 So.2d 957 (La.App. 1986). Where all persons pictured in the photographic display were of the same race, approximate age and body type, it was not necessary to include more than five photos. United States v. Bowie, 515 F.2d 3 (Wis. 1975). One photograph depicting a lineup of five persons placed at random was held not to be so suggestive as to give rise to a very substantial likelihood of misidentification. People v. Davis, 88 Misc.2d 774, 388 N.Y.S.2d 816 (1976). We conclude that Hyde has not established that the use of a five-photograph lineup in his case was impermissibly suggestive.

■ Hyde next argues that his photograph, which was included in the lineup, appeared brighter than the others because he was wearing a light-colored shirt. Hyde also contends that his was the only photo depicting an individual with light hair and eyes and a mustache which is almost imperceptible. Because of these distinctions, Hyde asserts

that the witnesses were impermissibly drawn to select his photo out of the lineup.

■ As this Court stated in State v. Haggard, 119 Idaho 664, 667, 809 P.2d 525, 528 (Ct.App.1991), a lineup may be considered unduly suggestive if a witness's attention is focused on a defendant. When a photo is placed in a spread in such a manner that the witness's attention is drawn to it because of size, color, placement or other distinguishing mark, the danger of misidentification is increased. See United States v. Fedorenko, 455 F.Supp. 893 (D.C.Fla.1978). Differences in the size and color composition of the photographs in and of themselves do not render an array unnecessarily suggestive. See State v. Boscarino, 204 Conn. 714, 529 A.2d 1260 (1987); State v. McKnight, 191 Conn. 564, 469 A.2d 397 (1983).

The district court found in Hyde's case that the photos were not unduly suggestive:

I think that these pictures are not unfair. They are all of Caucasian males, all of the same age, all of which have a mustache, all of which have no baldness, a full head of hair, all of which are dressed in what appears to be casual clothing....

Now, I do note that the picture of Mr. Hyde shows his mustache as being different colored than his hair which is unlike the other four pictures. However, in looking around the courtroom, I see nine people with mustaches and only one of those nine people [has] a mustache different color as [his] hair. I don't think that fact would make the lineup improper.

We have examined the photographs from the lineup, as well as the transcript from the motion to suppress the lineup. We conclude that the physical appearance of the four other subjects was compatible with Hyde's general characteristics. We hold that the lineup did not unfairly distinguish Hyde so as to warrant suppression of the photo identification on this basis.

Hyde's final challenge to the photo lineup relates to the procedure used in conducting the lineup. Hyde contends that the pretrial identification procedures lacked the appropriate safeguards to ensure that the witnesses were not influenced by other witnesses. He

asserts that although this procedure may have been the most economical approach for the police to present a photo lineup to the large number of witnesses, it was constitutionally defective.

■ Our Supreme Court has held that law enforcement officers should avoid the practice of having witnesses view a lineup in the presence of one another. *State v. Morris,* 97 Idaho 420, 423, 546 P.2d 375, 378 (1976); *State v. Grierson,* 95 Idaho 155, 504 P.2d 1204 (1972). Although a lineup conducted in this manner is not suggestive *per se,* the faulty procedure may render the evidence of the photographic lineup inadmissible. *Morris,* 97 Idaho at 423, 546 P.2d at 378, *citing Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ In this case, the district court determined that the presentation of the photos to the witnesses was not unfair or improper. There is no evidence in the record that there was any undue suggestion made to any of the victims prior to or during the viewing of the photographs. Officer Brown, who had arranged the photo lineup, testified that the seventy witnesses assembled in the room were advised not to speak to each other and not to touch any of the five photos. He testified that some witnesses approached the photos to see them better, but he observed no one linger in front of any particular photo, touch the photos or communicate with another witness. Further, he testified that the witnesses were each furnished a separate sheet of paper and were asked to indicate which person, if any, in the lineup was the perpetrator. Having examined the admonitions given to the witnesses and considered the testimony of the officer, we agree with the district court's conclusion that the photo lineup identification procedure was not contaminated by any improper suggestiveness.

We conclude that the photo lineup was not impermissibly suggestive so as to give rise to a very substantial likelihood of irreparable misidentification. Accordingly, we need not reach the second stage of the due process inquiry testing the reliability of the identification under a totality of the circumstances analysis. We uphold the district court's denial of Hyde's motion to suppress the identification from the photo lineup.

3. MOTION TO BE UNSHACKLED DURING TRIAL

■ Hyde claims that he was denied the presumption of innocence and a fair trial by being compelled to wear leg restraints and manacles attached to belly chains during trial. He contends that the district court's ruling on his motion to be unshackled during trial was improperly based on unreliable information and hearsay. Because the district court considered the hearsay testimony, Hyde asserts that he was prevented from cross-examining the officer who was the source of that information.

■ In a case involving a contumacious defendant, the United States Supreme Court upheld the practice of using shackles as a means of controlling a disruptive defendant, even though the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). *See State v. Moen,* 94 Idaho 477, 491 P.2d 858 (1971). If defendants are tried while restrained, it is because overriding concerns for safety or judicial decorum predominate. *State v. Crawford,* 99 Idaho 87, 96, 577 P.2d 1135, 1144 (1978). The use of any restraint must be based upon a finding of the necessity for that restraint. *Id.,* at 98, 577 P.2d at 1136. Absent such a finding, it is reversible error for a trial judge to require that an accused be shackled while on trial. *Id.*

■ This Court recently reiterated the analysis applicable to a trial court's discretionary decision whether to grant or deny the use of security devices during trial:

In exercising this discretion, the trial judge may rely upon evidence formally offered and admitted at trial, as well as knowledge gained from law enforcement officers and official records. [*State v. Moen,* 94 Idaho 477, 479, 491 P.2d 858, 860 (1971)].... When such a hearing [outside the presence of the jury] is held, the defendant and counsel should be provided the opportunity to oppose a demand by the

prosecution that additional security precautions be taken at trial.... *State v. Crawford, supra.* In addition, the trial judge should state on the record the reasons for ordering such security devices, so that an appellate court can determine whether the trial court has properly exercised its discretion. *State v. Moen, supra.* *State v. Knutson,* 121 Idaho 101, 105, 822 P.2d 998, 1002 (Ct.App.1991). Thus, we examine the record to determine whether the district court in Hyde's case adhered to the prescribed procedures.

At the hearing on the motion to be unshackled, Hyde and his counsel were present to respond to the testimony offered by the prosecutor in support of full restraints being used during trial. The prosecution urged that restraints were necessary to protect against an escape as well as against disturbances in the courtroom. The prosecution witnesses testified that Hyde had escaped from the Ada County jail where he was being held on other charges, had punched his Ada County court appointed counsel in the face just before firing him, and had been discovered with articles of clothing and a makeshift weapon to be used in an escape attempt from the Canyon County jail. Hyde's counsel cross-examined these witnesses who acknowledged that Hyde had acted appropriately in the courtroom during the Ada County trial and had not caused other problems while he was incarcerated at the Canyon County jail. Counsel concurred that leg irons alone would contain Hyde and would not unduly prejudice him before the jury. The district court reserved its ruling on the motion.

On the first day of trial, the district court revisited Hyde's request to be unshackled and indicated that it had learned from jail personnel that Hyde had made threats to stab someone with a pencil. Based on this additional knowledge, the district court ordered that Hyde be fully restrained, including leg irons and manacles tied to belly chains. The district court determined that restraints would be required to protect court personnel, attorneys and deputies from the risk of violence which Hyde had threatened. As further justification for security devices, the district court was also convinced that Hyde was a flight risk. The district court denied Hyde's motion. Immediately before the start of the trial, however, the district court modified its ruling and consented to the release of one of Hyde's hands so that he might take notes during the proceedings.

During the trial, Hyde made a motion for mistrial on the grounds that the jury members had an opportunity to see Hyde in the hallway, being led from the courtroom during a recess, with both of his hands in restraints. Hyde's motion was denied by the district court without comment.

■ Hyde's argument that he was not given adequate opportunity to rebut the information concerning earlier threatening statements attributed to him is well taken. However, what is determinative is that the error was not prejudicial in this case. *See State v. Moen,* 94 Idaho at 481, 491 P.2d at 862. A new trial will not be granted where, as here, consideration of the record as a whole reveals that justice has been done and that no other verdict could properly have been rendered. *Id.*

■ We conclude that any error committed by the district court in grounding its decision to restrain Hyde on information that did not come in at the hearing on the motion to be unshackled was harmless. The evidence which was presented to the district court at the hearing sufficiently justified the denial of Hyde's motion to be unshackled during trial. We hold that the use of security devices ordered by the district court was not excessive in view of the court's concerns for safety and to prevent escape. We reject Hyde's claim that the district court relied on unreliable information describing Hyde as a threat. Therefore, we uphold the district court's ruling as a proper exercise of its discretion.

■ In denying Hyde's motion for a mistrial, the district court concluded that no prejudice had occurred when some jury members may have seen Hyde in the hallway with both hands restrained. We also conclude that the jurors' view—if any—of Hyde in full restraints in the hallway was not prejudicial. Accordingly, we uphold the district court's denial of Hyde's mistrial motion.

### 4. TRIAL ERROR

 Hyde next asserts that it was error for the district court to overrule his objections to the testimony about a green coat and a hat which purportedly resembled the clothing worn by the robber. Although the items marked as exhibits 2 and 3, respectively, were never admitted into evidence or shown to the jury, Hyde claims that he suffered prejudice from the repeated references to the green coat and hat.

The investigation into the robbery led police to the home of Hyde's fiancee, where an officer discovered a military style green coat and a Panama hat that matched the witnesses' descriptions of clothing worn by the person who committed the robbery. Seeking to introduce the green coat and hat into evidence, the prosecutor directed four witnesses to the robbery to look into the bags containing exhibits 2 and 3 during their testimony, and to indicate whether they could identify the coat and the hat without removing them from the bag. The green coat and the hat were not shown to the jury, but each of the four witnesses testified that the items were similar to the clothing worn by the robber. Hyde objected to the testimony and argued that there was a lack of foundation for its admission. His objection was overruled. Hyde then moved to strike all of the witnesses' testimony relating to the green coat and the hat, which motion was denied by the district court.

The prosecutor then called the officer who had discovered the green coat and hat. Hyde objected to the officer's testimony, and the district court sustained that objection. Although the testimony concerning the green coat and hat was relevant to the issue of identity, the district court was not satisfied that the items found by the officer in the yard of Hyde's fiancee had been sufficiently linked to Hyde. The district court also sustained Hyde's objection to the state's motion to admit the green coat and hat into evidence.

Once the district court ruled to exclude the officer's testimony regarding the coat and hat, Hyde's counsel did not renew his motion to strike the testimony of the prior witnesses about the coat and hat. In spite of counsel's omission, the record shows that there was overwhelming evidence to support a jury verdict of guilty. Hyde was independently identified by ten witnesses who provided a description of Hyde to the police, selected Hyde from a photo lineup, and again identified him in court.

 Under Idaho Rule of Evidence 103(a), error may be predicated upon a ruling admitting evidence only if a substantial right of the party is affected. *See also State v. Goerig*, 121 Idaho 108, 822 P.2d 1005 (Ct. App.1991) (whether error affects a substantial right must be determined on a case by case basis). The error is deemed harmless if the reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence. *Giles v. State*, 125 Idaho 921, 877 P.2d 365 (1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 942, 130 L.Ed.2d 886 (1995); *State v. Boman*, 123 Idaho 947, 854 P.2d 290 (Ct.App.1993).

Hyde successfully kept out the testimony of the officer who had discovered the green coat and hat, as well as the items themselves. The only evidence admitted concerning the green coat and hat, therefore, was the witnesses' testimony, which became irrelevant once the court excluded the coat and hat from evidence. We conclude that the admission of that testimony did not affect a substantial right. I.R.E. 103(a). We are convinced beyond a reasonable doubt that the jury in this case would have reached the same result had the objectionable testimony been excluded.

### 5. POST–TRIAL MOTIONS

 Hyde contends that the district court erred in denying the preparation of a supplemental PSI report and a psychological examination. At the conclusion of the trial, Hyde requested that the district court order a separate PSI report because he claimed that the report prepared in connection with the Ada County case was incomplete. On the date of the sentencing hearing, Hyde objected to the use of the PSI report from the Ada County case. Hyde moved the district court to continue the sentencing, order a

new PSI report, and authorize the preparation of a psychological examination. The district court denied Hyde's motions.

■ The decision to order a PSI report, as well as a psychological examination, is within the discretion of the court. I.C.R. 32; *State v. Gowin,* 97 Idaho 146, 540 P.2d 808 (1975); *State v. Carey,* 122 Idaho 382, 834 P.2d 899 (Ct.App.1992). However, the trial court may forego a PSI report only where the record affirmatively establishes a valid reason therefor, and where there is sufficient information from independent sources to enable the sentencing court to fashion an appropriate sentence. *State v. Romero,* 116 Idaho 391, 775 P.2d 1233 (1989); *State v. Goldman,* 107 Idaho 209, 687 P.2d 599 (Ct.App.1984). The purpose of the PSI report is to provide information on defendant's family history, educational background, social history, sense of values and outlook on life in general. *Fodge v. State,* 125 Idaho 882, 886, 876 P.2d 164, 168 (Ct. App.1994). Under the circumstances, we find no error in the district court's use of the PSI report which was prepared and submitted in connection with Hyde's earlier sentencing for his convictions of robbery in Ada County. *See State v. Powers,* 100 Idaho 614, 616, 603 P.2d 569, 571 (1979). Absent a showing of some material change in Hyde's circumstances in the thirty days between the date the PSI report was prepared in the Ada County case and the sentencing hearing in this case, it was not error to use the same report. *Id.*

■ A psychological evaluation is not required in every case where the court orders a presentence report. *State v. Whitman,* 96 Idaho 489, 531 P.2d 579 (1975); *State v. Wolfe,* 124 Idaho 724, 726, 864 P.2d 170, 172 (Ct.App.1993); *State v. Anderson,* 103 Idaho 622, 624, 651 P.2d 556, 558 (Ct. App.1982). Here, Hyde did not specifically claim that the PSI report was deficient because it did not contain a psychological evaluation. Hyde argued only that a psychological evaluation could potentially identify "things that we may be able to bring forth in front of the court for the court's consideration in sentencing." The presentence investigator did not indicate that a psychological

evaluation was needed or that without an evaluation Hyde's prospects for treatment would be difficult to determine. A psychological examination is mandatory "if there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown." I.C. § 19–2522(1); *State v. McFarland,* 125 Idaho 876, 879, 876 P.2d 158, 161 (Ct.App.1994). Such was not the case here. Accordingly, the district court's denial of a psychological examination neither abused the district court's discretion nor rendered the PSI report inadequate under I.C.R. 32.

### 6. EXCESSIVE SENTENCE AND I.C.R. 35 MOTION

■ Hyde contends that the concurrent sentences of twenty-five years to life were excessive. He asserts that the sentences were in response to the nature of the crime committed during a church worship service. Hyde argues that the fixed term of his sentences would not be completed until Hyde reached the age of 62 and was beyond that required to meet any of the sentencing objectives.

■ In reviewing a sentence under the Unified Sentencing Act, we treat the minimum period as the probable measure of confinement. *See State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). Here, our review focuses on Hyde's minimum fixed terms of twenty-five years' imprisonment. The district court ordered that the sentences be served concurrently with the sentences of twenty years to life handed down in the Ada County case. For all practical purposes, therefore, Hyde's sentences in this case constitute an additional five years' incarceration before Hyde would be eligible for parole.

■ In reviewing a claim of an excessive sentence, we independently examine the record, having regard to the nature of the offense, the character of the offender and the protection of the public interest. *State v. Shideler,* 103 Idaho 593, 651 P.2d 527 (1982); *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Here, Hyde threatened adults and children in the church congregation with a gun, although no one was physically injured during the robbery. This robbery took place

on the same day as the robbery of the Boise Jehovah's Witness Kingdom Hall, which Hyde had planned and carried out in a like fashion.

The district court considered Hyde's lengthy criminal history, beginning with his institutionalization in juvenile facilities from the time he was thirteen years old. In addition to the Ada County robbery convictions, Hyde had been convicted of five prior felonies. His PSI report also details a host of other charges which were dismissed or for which the disposition is unknown. He had been placed on probation, unsuccessfully, had served prison time and been granted parole, all of which did not have the effect of deterring him from future crimes. In imposing the sentences in this case, the district court indicated that the sentences were designed primarily to protect society and to punish Hyde; they were not a moral or emotional condemnation for Hyde's conduct which defiled a church. Although we agree with Hyde that the nature of the instant offenses, standing alone, may not justify such lengthy sentences, our review of the reasonableness of the sentence must also take into account Hyde's character and criminal record. In light of Hyde's history of criminal conduct, we conclude that Hyde has not shown the sentences to be excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

We also find no abuse of discretion in the district court's denial of Hyde's I.C.R. 35 motion and related request for a progress report. If a sentence is not excessive when pronounced, the defendant must later show that it is excessive in view of new or additional information presented with his motion for reduction. *State v. Hernandez,* 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct.App.1991). While post-conviction behavior is a factor to be considered in rendering a sentence, it is not necessarily determinative. *State v. Marchant,* 115 Idaho 403, 405, 766 P.2d 1284, 1286 (Ct.App.1989); *State v. Clayton,* 112 Idaho 1110, 739 P.2d 409 (Ct.App.1987). We hold that the district court did not err in its denial of Hyde's request for a reduction of his sentences or his request for a progress report in support of his Rule 35 motion. Therefore, we affirm the concurrent sentences of twenty-five years to life and the order denying reduction of the sentences.

### CONCLUSION

The district court did not abuse its discretion in denying Hyde's motion to change venue or his request to be unshackled during trial. The district court properly denied Hyde's motion to suppress the photo lineup after concluding that the lineup was not so impermissibly suggestive as to give rise to misidentification. Because the green coat and hat and the testimony of the officer who was responsible for their discovery were excluded, the only evidence regarding the coat and hat was the testimony of the witnesses. The admission of their testimony, which defense counsel did not move to strike anew after the coat and hat were excluded, did not affect a substantial right. Finally, the district court did not err in denying Hyde's motions for an updated presentence report, a psychological examination, a reduction of his sentences and a progress report in support of his I.C.R. 35 motion. Therefore, we affirm the judgments of conviction and sentences.

WALTERS, C.J., and LANSING, J., concur.