873 P.2d 848

STATE of Idaho, Plaintiff–Respondent,

v.

Joseph Earl PRATT, Defendant–Appellant.

No. 18485.

Supreme Court of Idaho,
Boise, February 1993 Term.

March 18, 1994.

Rehearing Denied June 3, 1994.

Bruce H. Greene, Sandpoint, for appellant.

Hon. Larry EchoHawk, Atty. Gen., and Lynn E. Thomas, Deputy Atty. Gen., argued, Boise, for respondent.

1993 Opinion No. 83, Issued July 27, 1993, is hereby withdrawn and this Opinion is Substituted Therefor.

McDEVITT, Chief Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

On February 7, 1989, the State filed a criminal information against appellant, Joseph Earl Pratt ("Pratt"), charging him with eighteen crimes. The information alleged that a number of crimes occurred at the home of Louise Turner in Bonner County, Idaho, including robbery, first degree burglary, second degree kidnapping, aggravated battery, and ten counts of aggravated assault. The remaining crimes were allegedly committed during the course of Pratt's attempt to flee from the police, including aggravated assault upon a law enforcement officer, attempted first degree murder, and first degree murder.[1] The State gave notice of its intent to seek the death penalty, and Pratt pled "not guilty" to each count.

On April 13, 1989, Pratt filed a motion joining his co-defendant's (his brother, James Kevin Pratt) motion to strike language in Count XVIII, for the first degree murder of Brent Jacobson. Pratt moved that the following language be stricken:

[A]nd that at the time of the killing of such victim the victim was a peace officer, law enforcement officer, and executive officer duly commissioned as such by the United States Forest Service of the United States

---

1. Joseph Earl Pratt and James Kevin Pratt were charged with the same crimes. The Pratt brothers were tried together for these crimes. For our opinion in the James Kevin Pratt appeal, *see State v. (James) Pratt*, 125 Idaho 546, 873 P.2d 800 (1993).

Department of Agriculture, and was acting in his lawful discharge of his official duties, and assisting the Bonner County Sheriff's Department. The Defendant knew or should have known that Brent K. Jacobson was such an officer so acting, and that said shooting and killing occurred after voice notification to the Defendant of the status of such officer and after the Defendant had been pursued for many hours by such law enforcement officers. Further, that such shooting and killing occurred during the perpetration and commission of the felony criminal offenses of burglary in the first degree, kidnapping in the second degree, and robbery and was committed by the Defendant in the furtherance of said commission and perpetration of said felony criminal offenses, and to facilitate the escape and further the commission and perpetration of said felony offenses.

In support of this argument, Pratt cited I.C.R. 5.1 and I.C. §§ 18–4003(b), 19–510 and 19–5101(d). In regards to I.C.R. 5.1, the court ruled that it does not require specific findings of fact, only a finding of probable cause that a certain crime was committed by the defendant. As to the cited statutes, the court ruled that I.C. § 18–4003(b) is not limited by I.C. § 19–510, because to do so would exempt deputy sheriffs, Idaho State Police officers, and even the President of the United States from its protection. The court further ruled that "the legislature intended the protection of I.C. § 18–4003(b) to extend to all persons serving in the designated capacities of peace officer or executive officer [whether] federal or state." It also found that the victim fit within I.C. § 18–4003(b). Finally, the court ruled that the Pratts were engaged in the commission of a felony during the killing, as they were escaping from the scene of the crime, because there was a "continuous and unbroken chain of events, ..." *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1986), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

Pratt also joined his co-defendant's motion to strike certain counts, as either not supported by the evidence or duplicative. The court denied the motions by order issued on May 8, 1989.

After fifteen days of a jury trial, the jury returned its verdict, finding Pratt guilty of first degree burglary, robbery, second degree kidnapping, ten counts of aggravated assault, aggravated assault upon a law enforcement officer and attempted first degree murder. Pratt was also convicted of first degree murder on the grounds that the killing occurred during the perpetration or attempted perpetration of robbery, burglary or kidnapping, I.C. § 18–4003(d), and that the person killed was a peace officer acting within the scope of his duties, I.C. § 18–4003(b). Pratt was found not guilty of aggravated battery.

The sentencing hearing was held on November 27, 1989. On the same day, the court issued its I.C. § 19–2515 findings. The court considered, evaluated, and identified the mitigating and statutory aggravating circumstances, including the statutory aggravating circumstance defined in I.C. § 19–2515(g)(7) (the murder was one defined as first degree murder by I.C. § 18–4003(d) accompanied by specific intent to kill). The court then weighed all of the mitigating circumstances against each one of the statutory aggravating circumstances, and concluded that

[t]he killing herein was of a police officer acting in the line of duty, known by the defendant to be acting in the line of duty and committed during the on going commission of serious and dangerous felony offenses and was accompanied with the specific intent to cause death. But in the opinion of the Court, the death penalty would be unjust because Defendant did not fire the fatal shots.[2]

On November 30, 1989, the court entered its judgments and sentences. For first degree burglary, Pratt was sentenced to a fixed

---

**2.** The district court stated, in its I.C. § 19–2515 findings:

JOSEPH PRATT did not fire the fatal shots that killed Brent Jacobson. But that was not because of any reluctance on his part to do so. He certainly demonstrated a willingness to do

so and, in law, is equally responsible for the acts of James Kevin Pratt since the two were conspirators carrying out a common scheme and plan to commit burglary, robbery, kidnapping and assault.

term of ten years, this sentence to run concurrently with the sentence imposed for robbery. For robbery, Pratt was sentenced to a fixed term of twenty-five years. For second degree kidnapping, Pratt was sentenced to a fixed term of ten years, this sentence to run consecutive to the sentence for robbery. For each of the ten counts of aggravated assault, Pratt was sentenced to a fixed term of two years, these sentences to run concurrently with the sentences imposed for robbery and first degree burglary. For aggravated assault upon a law enforcement officer, Pratt was sentenced to a fixed term of five years, this sentence to run consecutive to the sentences imposed for robbery and second degree kidnapping. For attempted first degree murder, Pratt was sentenced to a fixed term of fifteen years, this sentence to run consecutive to the sentences imposed for robbery, second degree kidnapping, and aggravated assault upon a law enforcement officer. Pratt was sentenced to a life term with a fixed term of twenty-five years for first degree murder, this sentence to run consecutive to all of his other sentences.

On March 29, 1990, Pratt filed an I.C.R. 35 motion to reduce sentence. He contended that his sentences were unlawful in that (1) they violated Idaho's double jeopardy laws, and (2) the sentence for first degree murder bars conviction on all prior counts as included offenses under I.C. § 19–1719 and applicable case law.

On March 4, 1991, the court entered its order on Pratt's I.C.R. 35 motion. The court disagreed that the conviction and sentence for first degree murder barred conviction on all prior counts. In this regard, the court cited *State v. Hall*, 86 Idaho 63, 383 P.2d 602 (1963), *overruled in part, Sivak v. State*, 112 Idaho 197, 212, 731 P.2d 192, 207 (1986), as an analogous case. In addition, the court reexamined Pratt's sentences in light of this Court's holding in *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *overruled in part, State v. Card*, 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992), and, as a result, merged the sentences for burglary, robbery, and sec-

ond degree kidnapping into the sentence for first degree murder. In addition, the court restructured Pratt's sentences, providing that the sentences for aggravated assault will be served first and concurrently to one another, followed by the sentence for aggravated assault upon a law enforcement officer, then the attempted first degree murder sentence, and finally the sentence for first degree murder. The court issued its amended judgment and sentence to this effect on the same day.

Pratt filed his notice of appeal on January 5, 1990, appealing from his November 30, 1989 judgment and sentence pursuant to I.A.R. 11. On appeal, Pratt raises the following issues:

### ISSUES ON APPEAL

I.  Did the district court err by instructing the jury that the deceased victim, Brent Jacobson, was a peace or executive officer?

II. Were the jury instructions misleading, confusing, and misstatements of the law?

III. Is I.C. § 19–2132(b)(2) and (c), which is the basis for Jury Instruction 61, unconstitutional in that it denied Pratt his right to trial by jury?

IV. Is Pratt's sentence unreasonable?

### ANALYSIS

#### I.

■ Pratt argues that the fatal shooting of Brent Jacobson does not constitute first degree murder as it is defined in I.C. § 18–4003(b):

> (b) Any murder of any peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney who was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting, shall be murder of the first degree.

Pratt contends that Brent Jacobson, who was a law enforcement officer of the United States Forest Service, was not a peace officer "acting in the lawful discharge of his duty" as

contemplated by I.C. § 18–4003(b). We agree, and accordingly vacate Pratt's conviction of first degree murder based upon I.C. § 18–4003(b). In order to invoke the application of I.C. § 18–4003(b), the State must prove three elements: (1) that the victim was a peace officer, executive officer, fireman, judicial officer or prosecuting attorney; (2) that the victim was acting in the lawful discharge of an official duty; and (3) that the defendant knew or should have known that the victim was an officer so acting. It is clear from the facts of this case that Jacobson was not acting in the lawful discharge of a "peace officer's" duty at the time he was fatally shot. Jacobson's law enforcement authority was defined in a Cooperative Agreement between Bonner County and the U.S. Department of Agriculture Forest Service upon which the State relied as the basis for his authority. In the Agreement, the Forest Service agreed:

> [W]ithin availability of funds and established Service regulations and policies ... to provide support and cooperation to Bonner County in the enforcement of State and local laws on lands and water within or a part of any unit of the National Forest System.

The agreement did not provide that Forest Service personnel such as Jacobson would be acting as peace officers on private land, upon which it is conceded the fatal shooting occurred. Thus, Jacobson was not acting as a peace officer in the lawful discharge of his official duty at the time he was shot, and the shooting cannot qualify as first degree murder under I.C. § 18–4003(b).

■ However, Pratt's conviction of first degree murder does not rest solely upon I.C. § 18–4003(b), but also is grounded in I.C. § 18–4003(d), as a murder committed in the perpetration of, or attempt to perpetrate robbery, burglary or kidnapping, or felony murder. Pratt challenges his conviction of felony murder on the basis that the district court erroneously instructed the jury on the elements of felony murder. Pratt contends that the court, in Jury Instruction 60, erroneously instructed the jury that the felony murder rule does not include the element of intent. We hold that the district court did not err in its felony murder instruction. Felony murder does not include any element of intent. *State v. Windsor*, 110 Idaho 410, 419, 716 P.2d 1182, 1190 (1985). Murder is defined as an unlawful killing with malice aforethought. I.C. § 18–4001. Idaho Code § 18–4002 provides that "such malice may be express or implied." Under I.C. § 18–4003(d), "malice aforethought" is satisfied by the fact that the killing was committed in the perpetration of the felony. *State v. Dunlap*, 125 Idaho 530, 873 P.2d 784 (1993) (citing *State v. Lankford*, 116 Idaho 860, 866, 781 P.2d 197, 203 (1989)).

We uphold Pratt's conviction of first degree murder based on I.C. § 18–4003(d).

## II.

Pratt challenges various other jury instructions given by the trial court. His challenge includes Jury Instructions ("J.I.") 26, 30, and 37, regarding the killing of a peace officer, J.I. 32, regarding an unlawful killing, and J.I.'s 31, 36, 83, 84, and 87(a), regarding self-defense.

Our review of the record discloses that the jury instructions given by the trial court do not misstate the law. "Reversal is not required when an instruction does not contain a misstatement of the law." *State v. Enno*, 119 Idaho 392, 403, 807 P.2d 610, 621 (1991). We therefore hold that the jury instructions were proper.

## III.

■ Pratt challenges the constitutionality of I.C. § 19–2132, which served as the basis for J.I. 61. Jury Instruction 61 provides:

> The law permits the jury to find the defendant guilty of any lesser offense which is necessarily included in the crime charged in the Information, whenever such a course is consistent with the facts found by the jury from the evidence in the case, and with the law as given in the instructions of the Court.
>
> When you are deliberating with respect to each count, you should first consider the crime charged. You should consider the included offenses only in the event the State has failed to convince you beyond a

reasonable doubt of the guilt of the accused with respect to the crime charged.

The jury will bear in mind that the burden is always upon the Prosecution to prove beyond a reasonable doubt every essential element of any lesser offense which is necessarily included in any crime charged in the Information; the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

Pratt's specific challenge is that present-day I.C. § 19–2132 violates the right to a jury trial, as it is guaranteed by Idaho Const. art. I, § 7. He maintains that the 1988 revision of I.C. § 19–2132 has altered the previous versions of the statute in that the jury no longer has unfettered discretion to determine what charge most correctly fits the facts and circumstances proven at trial.

Article I, section 7 of the Constitution of the State of Idaho provides, in part, that "[t]he right of trial by jury shall remain inviolate...." "This section has been interpreted in several of our cases as guaranteeing the right to trial by jury as it existed at the time of the adoption of the Constitution." *State v. Sivak*, 105 Idaho 900, 903, 674 P.2d 396, 399 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984), citing *People v. Burnham*, 35 Idaho 522, 207 P. 589 (1922); *Christensen v. Hollingsworth*, 6 Idaho 87, 53 P. 211 (1898). The Constitution of the State of Idaho was approved on July 3, 1890.

In 1864, the Legislative Assembly of the Territory of Idaho enacted the Criminal Practice Act, a portion of which contained the origin of present-day I.C. § 19–2132:

Sec. 385. In charging the jury, the court shall state to them all such matters of law as it shall think necessary for their information in giving their verdict.

Sec. 386. Either party may present to the court any written charge and request that it may be given. If the court think it correct and pertinent, it shall be given, if not, it shall be refused.

Sec. 387. Upon each charge so presented, and given or refused, the court shall endorse its decision, and shall sign it. If part be given and part refused, the court shall distinguish, showing by the endorsement what part of the charge was given and what part refused.

An Act To Regulate Proceedings In Criminal Cases, ch. 2, §§ 385–87, 1864 Idaho Session Laws 234, 285. The language of the 1864 enactment, §§ 385–87, remained substantively unchanged for one-hundred thirteen years, until the legislature divided it into two subsections, adding the language appearing in subsection (b):

(b) The court shall instruct the jury on lesser included offenses when they are supported by any reasonable view of the evidence.

An Act Relating To Substantive And Procedural Criminal Laws, ch. 154, § 7, 1977 Idaho Session Laws 390, 394–95. This provision remained unchanged for eleven years, until the legislature altered a portion of subsection (b) and added subsections (b)(1), (b)(2), and (c). We include the deletions (strikeout) and additions (underline) to the 1988 amendment:

(b) The court shall instruct the jury *with respect to a* lesser included offense *if:*

*(1) Either party requests such an instruction; and*

*(2) There is a reasonable view of the evidence presented in the case that would support a finding that the defendant committed such lesser included offense but did not commit the greater offense.*

*(c) If a lesser included offense is submitted to the jury for consideration, the court shall instruct the jury that it may not consider the lesser included offense unless it has first considered each of the greater offenses within which it is included, and has concluded in its deliberations that the defendant is not guilty of each of such greater offenses.*

An Act Relating To Instructions On Included Offenses In Criminal Cases, ch. 327, § 1, 1988 Idaho Session Laws 989, 989–90. Idaho Code § 19–2132 has remained the same since the 1988 amendment.

Pratt's argument is focused upon subsection (c), which dictates that the jury shall first consider the greater offense and reject

it before it can consider the lesser offense. Prior to subsection (c), Pratt argues that the jury did not have to first consider the greater offense, but instead could begin its deliberation on a criminal count with a lesser offense. We fail to see how subsection (c) has changed the jury's power to find a criminal defendant guilty of a lesser offense.

Since 1864, the law in Idaho has been:

Sec. 358. When it legally appears that a defendant has committed a public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only.

An Act To Regulate Proceedings In Criminal Cases, ch. 2, § 358, 1864 Idaho Session Laws 234, 281. This provision remains substantively unchanged, now codified at I.C. § 19–2105. In *State v. Koho*, 91 Idaho 450, 455, 423 P.2d 1004, 1009 (1967), this Court reviewed a jury instruction which charged, in part:

Should the jury find from the evidence that the defendant has committed a public offense charged in the information but entertain a reasonable doubt as to which of several degrees he is guilty, then he can be convicted only of the highest degree as to his guilt of which you have, from the evidence, no reasonable doubt.

We upheld the instruction even though it did not strictly follow the language of I.C. § 19–2105. In so doing, we stated that the instruction "was a correct statement of the intent of the statute as applied to a case involving more than two degrees of crime, such as this where murder of the first and second degrees and voluntary manslaughter were involved." *Koho*, 91 Idaho at 455, 423 P.2d at 1009.

The rule in Idaho has always been that a criminal defendant cannot be convicted of a crime unless the factfinder finds the defendant guilty of committing every fact necessary to constitute the crime beyond a reasonable doubt. *State v. Hoffman*, 123 Idaho 638, 693, 851 P.2d 934, 939 (1993); *State v. Seymour*, 7 Idaho 257, 260, 61 P. 1033, 1034 (1900). In addition, it has always been the law in Idaho that a trial court cannot give an instruction on a lesser offense unless that lesser offense is supported by a reasonable view of the evidence. *State v. Thomasson*, 122 Idaho 172, 175, 832 P.2d 743, 746 (1992); *State v. Thomas*, 47 Idaho 760, 766, 278 P. 773, 775 (1929). Thus, the law has not changed; a jury must still find guilt beyond a reasonable doubt of every fact necessary to constitute the crime charged, and the jury must convict an accused of the highest degree of the crime charged of which the jury has no reasonable doubt of the accused's guilt. The 1988 revision of I.C. § 19–2132 does not violate the right to a jury trial as it is guaranteed by Idaho Const. art. I, § 7.

## IV.

Pratt contends that the district court abused its discretion in sentencing him, *i.e.*, he contends that his sentences are unreasonable.

■ Our standard in reviewing sentences is:

Sentencing is a matter committed to the discretion of the trial judge, and the defendant has the burden of showing a clear abuse thereof on appeal. In exercising this discretion, reasonableness is a fundamental requirement.

*State v. Broadhead*, 120 Idaho 141, 144, 814 P.2d 401, 404 (1991), *overruled on other grounds*, *State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992) (quoting *State v. Dillon*, 100 Idaho 723, 724, 604 P.2d 737, 738 (1979)). More particularly, Pratt's burden is to "show that in light of the governing criteria, [his] sentence was excessive under any reasonable view of the facts." *Broadhead*, 120 Idaho at 145, 814 P.2d at 405 (quoting *State v. Small*, 107 Idaho 504, 505, 690 P.2d 1336, 1337 (1984)). In conducting our analysis, we must consider Pratt's sentences in light of the four goals of criminal punishment: (1) protecting society; (2) deterring the defendant and others from the criminal conduct; (3) the possibility of rehabilitating the defendant; and (4) punishment and retribution. *Broadhead*, 120 Idaho at 146, 814 P.2d at 406.

■ The record discloses that Pratt and his brother planned to steal money from

Louise Turner, entered her home dressed in black and armed with weapons to achieve this purpose; assaulted several people; took a hostage to facilitate their escape when police officers arrived at the Turner residence before the initial crime could be completed; led police officers on a car chase, during which James Pratt shot at a pursuing police vehicle; led officers on a foot chase through the woods; engaged two pursuing officers in a shoot-out, killing one of the officers; and then surrendered. The Pratt brothers placed the lives of several people in danger, refused to surrender until one police officer was killed, and committed several other crimes in the process. Based upon the record, we hold that the sentences imposed are not excessive under any reasonable view of the facts.

## PRATT'S CONVICTION ON COUNT XVI

■ Pursuant to our holding in *State v. (James) Pratt*, 125 Idaho 546, 873 P.2d 800 (1993), we vacate Joseph Pratt's conviction on Count XVI, attempted felony murder. There is no such crime in Idaho as *attempted* felony murder, as intent is not an element of *felony* murder, *State v. Windsor*, 110 Idaho 410, 419, 716 P.2d 1182, 1191 (1985), *cert. denied*, 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); I.C. § 18–4003(d), but is an element of *attempt* to commit a crime, I.C. § 18–305.

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of the district court, except the conviction and sentence for Count XVI, attempted felony murder, which we vacate.

JOHNSON and TROUT, JJ., and BENGTSON, J., Pro Tem., concur.

BISTLINE, Justice concurring and dissenting.

Because it has been changed and is generally in accord with the views which I heretofore expressed and appended to 1993 Opinion No. 83, issued by this Court on July 27, 1993, which is today withdrawn and replaced with the above opinion, I concur in Part I, and also concur in the section of the opinion vacating the conviction for "attempted felony-murder." 125 Idaho at 601, 873 P.2d at 855 (1994). As to the remainder of the majority opinion, I suggest that the Court reconsider, and advance the following analysis.

## THE COURT SHOULD FORTHRIGHTLY ADDRESS THE CHALLENGES TO THE GIVEN JURY INSTRUCTIONS IN A LOGICAL FASHION.

Pratt challenges ten jury instructions. The majority casually disposes of these challenges in one short paragraph wherein it asserts without discussion that the jury instructions do not misstate the law. In my view, where, as here, the stakes at issue are not insignificant, the Court should specifically address all issues on appeal which have been properly raised, unless such discussion is unnecessary to a resolution. Here, Pratt's challenges to the jury instructions were properly raised; had he prevailed on any of those challenges the outcome of this case could be different, and in my view would be. No reason is advanced which sustains the majority in not fully deciding all issues; it is only in that manner the litigants and the public will have the benefit of the Court's reasoning. Only in that manner will we also avoid the impression that we are making decisions which may be regarded as result-oriented. *See Matter of Aragon*, 120 Idaho 606, 612, 818 P.2d 310, 316 (1991) (Bistline, J., specially concurring). Additionally, in setting forth the underlying basis for our decisions we will provide guidance to the bench and bar for future cases, a significantly important function of any Court, and one that is sometimes neglected in the attempt to keep up with the ever-burgeoning appeal docket. Moreover, what may appear to interest readers as an apparently indifferent treatment of these important issues by the majority may effectively deprive Joseph Pratt of a meaningful appeal. Otherwise stated, is not Joseph Pratt entitled to a full explanation of the majority's rejection of the arguments which he asserts entitles him to a new trial? Ordinarily the opinion of the Court are carefully crafted with a view to-

ward gaining or maintaining credibility in the eyes of the litigants and the general public. Properly raised issues are deserving of being addressed.

Facially, Pratt's challenges to the giving of instructions regarding the killing of a peace officer were well founded. As noted by the majority, the United States Forest Service officer was not a peace officer for purposes of I.C. § 18–4003(b). Accordingly, instructions numbered 26, 30, and 37, which addressed the killing of a peace officer, should not have been given to the jury. But, they were given and could not but have worked an unfair disadvantage to both Pratt defendants.

Pratt also argues that instruction 60 was an incorrect statement of the law. That instruction reads:

> The Felony Murder Rule does not include any element of intent; a Defendant who participates in a felony can be held responsible for the death of any person killed during the commission of the felony, regardless of the individual's intent that a death occur, unless you find the killing to be otherwise excusable or justifiable.

Pratt argues that a prerequisite to felony murder is that there must be a murder, I.C. § 18–4003(d), and in order for any murder to occur there must be an intent to kill. The problem with his argument is that murder requires "malice aforethought," not necessarily the intent to kill. I.C. § 18–4001. Malice aforethought may be express or implied. I.C. § 18–4002. Intent to kill is express malice aforethought. *Id.* With felony murder, however, malice aforethought is implied from the fact that the killing took place during the commission of a felony. *State v. Lankford (Mark)*, 116 Idaho 860, 866–67, 781 P.2d 197, 203–04 (1989) *cert. den.* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990). Thus, I agree with the majority that jury instruction 60 correctly states the law.

Pratt next argues that instruction 32, which states that a "killing is unlawful if it was neither justifiable nor excusable," was misleading because it implied that a nonjustifiable or inexcusable killing must be murder. Of course, manslaughter, a lesser included offense in this case, is also an unlawful killing. Pratt's concern is unfounded, however, because instruction 57 informed the jury that if it "was satisfied beyond a reasonable doubt that the killing was unlawful, but without malice, [it] must determine and state in [its] verdict whether [it finds] the killing to be voluntary or involuntary manslaughter." Further, instruction 58 advises the jury that, should it decide that the killing was unlawful but entertains "a reasonable doubt whether the crime was murder or manslaughter, [it] must give the Defendant the benefit of such doubt and find it to be manslaughter." Upon a close reading of instructions 32, 57, and 58 together, it can only be concluded that the jury could not have been misled into believing it was required to return a murder verdict if it found the killing to be unlawful.

Finally, Pratt argues that there are "inherent conflicts" between instructions 31 and 36 and instructions 83, 84, and 87(a). Pratt argues these instructions allowed the jury to convict both Pratts of felony murder even if the jury found his brother shot the United States Forest Service officer in self-defense. Pratt does not explain his theory further and, after independently reviewing the instructions, I cannot see how they could be read as Pratt suggests. In any case, if those instructions were somehow ambiguous, the district court's instruction 60 clearly states that a person is not guilty of felony murder if the jury finds the killing to be "otherwise excusable or justifiable."

Although I ardently maintain that the majority should have undertaken an analysis of the instructions, I concur in the majority's conclusion as to the district court's instructions 31, 32, 36, 60 83, 84, and 87(a). I dissent as to the majority's conclusion concerning instructions 26, 30, and 37.

I.C. § 19–2132(c), WHICH FORBIDS A JURY FROM CONSIDERING A LESSER–INCLUDED OFFENSE UNTIL IT UNANIMOUSLY AGREES THAT THE DEFENDANT IS NOT GUILTY OF THE GREATER OFFENSE, UNCONSTITUTIONALLY RESTRICTS THE DEFENDANT'S RIGHT TO A FAIR AND IMPARTIAL JURY TRIAL.

Because the majority "fails to see how [I.C. § 19–2132] subsection (c) has changed

the jury's power to find a criminal defendant guilty of a lesser offense," I will attempt to explain it for its benefit and that of the interested reader. 125 Idaho at 600, 873 P.2d at 854. The statute decreases a jury's power because from the beginning of statehood (over one hundred years ago) until the 1988 amendment to I.C. § 19–2132 the jury *could consider a lesser included offense if the jurors did not unanimously agree that the defendant was guilty of the greater charge.* After 1988, I.C. § 19–2132(c) forbade the jury from considering the lesser included offense until the jurors unanimously agreed that the defendant was not guilty of the greater offense. Thus, in those cases where some but not all of the jurors have a reasonable doubt as to the defendant's guilt as to the greater offense, the jury may not go on to consider the lesser included offense, as it could have before 1988. Obviously, until the jury is allowed to consider the lesser included offense it cannot return a verdict based upon the lesser included offense.

The intent of the 1988 amendment is twofold. The first goal is to obtain more convictions on the greater offense by presenting juries with an all-or-nothing choice (because there will be fewer cases where the jury will be able to consider the lesser included offense). Thus some of those jurors who have a reasonable doubt as to whether the defendant committed the greater offense may be pressured to vote to convict on the greater offense rather than continue deliberating until the court declares a hung jury. The second goal is to obtain hung juries in those cases where the jurors who have a reasonable doubt as to the defendant's guilt are not pressured into returning a verdict on the greater offense. Apparently, the State would rather have a hung jury as to the greater offense than a conviction on a lesser included offense because with a hung jury, it has the option to retry the original charge. If the jury returns a verdict of guilty to the lesser included charge, the State is barred by the double jeopardy clause from retrying the greater charge. *Green v. United States,* 355 U.S. 184, 192, 78 S.Ct. 221, 226, 2 L.Ed.2d 199 (1957) (defendant charged with first degree murder but convicted of second degree murder could not be retried for first degree murder after second degree murder conviction overturned on appeal).

However arguably laudable these goals may be, the enactment of I.C. § 19–2132 violates our state constitution wherein it diminishes the jury's power as it existed at the time of the adoption of our constitution. As the majority itself notes, art. 1, § 7 of the Idaho Constitution provides that "[t]he right of trial by jury shall remain inviolate." That clause guarantees the right to a jury trial as it existed at the time of the adoption of the Constitution. *Christensen v. Hollingsworth,* 6 Idaho 87, 93, 53 P. 211 (1898). Because at the time the Constitution was adopted a jury could consider whether to convict on the lesser included offense whenever it did not unanimously agree that the defendant was guilty of the greater offense, the 1988 amendment to I.C. § 19–2132, which abrogates that power, constitutes a clear violation of art. 1, § 7 of the Idaho Constitution. Accordingly, every conviction on a count wherein a lesser included instruction was given should be reversed and a new trial ordered.

Finally, because of a strong and unyielding belief that the cause should be remanded for a new trial, I express no opinion on part IV of the majority opinion wherein it upholds the sentence imposed.