**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50056**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: July 12, 2023 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| BAILEY JEAN HAMMER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick J. Miller, District Judge.

Order denying motion for mistrial, <u>affirmed</u>; judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Bailey Jean Hammer appeals from the district court's denial of her motion for a mistrial. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Hammer was charged with violation of a no-contact order (NCO), Idaho Code § 18-920(3). The charge stemmed from Hammer contacting the protected party by leaving a voicemail. The matter proceeded to a jury trial.

During voir dire, one of the potential jurors, Juror 9, indicated he knew the protected party, stating:

| | |
|---|---|
| [THE COURT]: | Juror No. 9, do you know Mr. Munson personally? |
| [JUROR 9]: | I do, Your Honor. Socially and professionally. |
| THE COURT: | Personally and professional [sic]? |
| [JUROR 9]: | I bar tend downtown and that's how we met. |

1

| | |
|---|---|
| THE COURT: | So anything about your knowledge of Mr. Munson that would cause you to feel like you would automatically give greater weight or lesser weight? |
| [JUROR 9]: | I think I've heard about this has been going on for a while. |
| THE COURT: | Why don't we leave it there. So okay. So you may have heard about--something about this case? |
| [JUROR 9]: | Yes, Your Honor. |
| THE COURT: | All right. |

Following this exchange, the district court dismissed Juror 9 for cause.

During a recess, a prospective juror reported to the district court that Juror 22 had opined that Hammer was guilty and a "tweaker" based on her movements and appearance. The reporting juror indicated that she had hushed Juror 22 and that none of the prospective jurors replied to the comment. The district court and both parties questioned the reporting juror in chambers. Hammer then moved for a mistrial. The district court denied the motion. The district court and both parties then questioned Juror 22 in chambers. Juror 22 admitted to commenting on Hammer's appearance and saying something to the effect of: "[W]hat if we think she looks like she's on drugs and that affects our opinion on the matter or something like that. Then what? Because I'm not going to stand up in front of everybody and say that." Following completion of voir dire, Hammer declined to pass the panel for cause and, citing the cumulative effect of both jurors' comments, renewed her motion for a mistrial. The district court again denied Hammer's motion.

Following voir dire, the district court instructed the selected jury to weigh only the evidence properly introduced at trial. Before deliberations, the district court again instructed the jury to consider only the evidence presented during trial and to follow the court's instructions. Ultimately, the jury found Hammer guilty of violating the NCO. Hammer timely appeals.

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). When this Court reviews the denial of a motion for mistrial in a criminal case, the question

> is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion

2

for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

## III.

## ANALYSIS

On appeal, Hammer argues that the district court erred in denying her motion for a mistrial. Hammer contends that the motion for mistrial should have been granted because the entire jury panel was tainted by the cumulative effect of prejudicial statements made by Juror 9 and Juror 22. Hammer asserts Juror 9's statement "going on for a while," alongside Juror 22's "tweaker" comments informed the jury that Hammer looked guilty, was on drugs, and had violated the NCO multiple times. The State argues that the district court's denial of Hammer's motion for a mistrial was not in error because Hammer failed to show that the prospective jurors' comments caused actual bias in the selected jury and that any prejudice was cured by the district court's instructions.

A criminal defendant has a constitutional right to trial by an impartial jury. U.S. CONST. amends. V, VI, XIV; IDAHO CONST. art. 1, §§ 7, 13. "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury." *State v. Ellington*, 151 Idaho 53, 69, 253 P.3d 727, 743 (2011) (quoting *Ross v. Oklahoma,* 487 U.S. 81, 86 (1988)). A response to voir dire questioning must have a lasting impact for there to be prejudice. *State v. Laymon*, 140 Idaho 768, 771, 101 P.3d 712, 715 (Ct. App. 2004). A juror's expression of her own opinion of the case during voir dire does not render her partial. *Ellington*, 151 Idaho at 69, 253 P.3d at 743. The Idaho Supreme Court has explained:

> The trial court does not need to find jurors that are entirely ignorant of the facts and issues involved in the case. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*State v. Hairston*, 133 Idaho 496, 506, 988 P.2d 1170, 1180 (1999) (internal citations and quotations omitted); *see also State v. Yager*, 139 Idaho 680, 688, 85 P.3d 656, 664 (2004).

3

In this case, the jurors' remarks did not have a continuing impact on the trial that would warrant a mistrial. Hammer has not overcome the presumption that the impaneled jury was impartial and cannot show bias or prejudice in any seated juror. The jury did not learn specific facts and the district court gave adequate curative instructions.

Responding to standard voir dire questions, Juror 9 indicated he heard something had been going on for a while. Juror 9 was then dismissed for cause. After the exchange, the district court stated, "We don't want jurors who might know something about a case." The district court found Juror 9's innocuous statement only indicated knowledge that the case existed. Questions will inevitably prompt some jurors to express awareness of the case. Here, the vague statement did not impart specific facts about Hammer or knowledge of prior bad acts. The statement would not tend to lead the jury to conclude there had been prior charges, but only indicated awareness of the case.

Juror 22's "tweaker" and guilt comments also did not taint the jury pool as these statements did not impart specific facts. The district court found the statements did not concern guilt, but instead, whether drug use mattered in the case. The district court noted that, "even during jury selection it is akin to a juror asked a question aloud, I believe the person is guilty based on the way they're acting." Moreover, Juror 22's statements did not reveal to the other jurors a reasonable basis for its veracity.

In *State v. Kilby*, 130 Idaho 747, 947 P.2d 420 (Ct. App. 1997), a prospective juror in a sexual abuse case burst out that Kilby was a pedophile. In holding Kilby was not denied a fair trial, this Court reasoned that the juror was excused and the remaining jurors were instructed to ignore the comment, which they were presumed to follow. *Id.* at 751, 947 P.2d at 424. In *Kilby*, there was no indication that the prospective juror had any factual basis to make the allegation. Further, this Court focused on the important fact that the prospective juror was excused and the impaneled jury properly instructed.

In *Laymon*, a prospective juror in Laymon's petit theft case, stated that she had been disqualified from the jury pool the week before in Laymon's trial for possession of controlled substances and because her son had also been convicted of drug charges. *Laymon*, 140 Idaho 768, 101 P.3d 712. She said she was biased against Laymon "because of the drug relationship," and stated that she thought "he's guilty already. If he's guilty last week, he'll be guilty next week." *Laymon*, 140 Idaho at 769, 101 P.3d at 713. After denying Laymon's motion for mistrial, the

4

district court gave a curative instruction and the juror who made the comments was removed for cause. On review of the denial of the motion for mistrial this Court noted:

> [T]here is no evidence that the jury here did not follow the trial court's instructions. The potential juror who uttered the statements at issue was removed, and there is no evidence that her statements had but a passing, inconsequential effect on the remaining pool members. There is also nothing in the record to show that the potential juror's views about the previous week's aborted trial had a continuing impact on Laymon's petit theft trial.

*Id.* at 771, 101 P.3d at 715. This Court determined that the information regarding Laymon's drug case, as well as the prospective juror's opinion of guilt, had a "passing, inconsequential effect on the remaining pool members" that did not deprive Laymon of a fair trial. *Id.*

In *Ellington*, the district court asked the jury pool if anyone had formed an opinion that Ellington was guilty. A prospective juror indicated that he had "read about it in the papers" and believed that Ellington was guilty. *Ellington*, 151 Idaho at 68, 253 P.3d at 742. Another juror indicated she had a conversation with the victim's aunt the day after the incident occurred and was "on her side of him being guilty." *Id.* at 68-69, 253 P.3d at 742-743. A final juror stated that he had already formed an opinion based on the news he had read in the papers and seen on television "such that he could not give Mr. Ellington a fair trial." *Id.* at 69, 253 P.3d at 743. The Supreme Court stated that "at worst, the jurors who actually deliberated received a second-hand opinion from those . . . prospective jurors," and that "they did not receive any specific facts as to why, other than that the prospective jurors read about it in the paper and in one instance interacted with a member of the [victim's] family." *Id.* The Supreme Court looked to "specific facts" learned and did not engage in a discussion of inference or implication. *Id.* However, the implication from the prospective jurors indicated the two jurors who formed their opinion of guilt was based on media reports and, for one juror, interacting with the victim's family member. These were not baseless expressions of opinion. Yet, the Supreme Court stated that "at worst, [some] jurors who actually deliberated received a second-hand opinion." *Id.*

The jurors' statements in this case are much less compelling than those found insufficient to warrant a mistrial in *Kilby*, *Laymon*, and *Ellington*. In combination, neither expression revealed to the jury personal knowledge of actual events in the case or prior conduct. The district court noted it was unlikely the comments influenced the jury so early in the proceedings, and other potential jurors did not respond to Juror 22's comments. The district court explained, "based upon the remainder of the instructions to be given to the jury now and at the end of trial," Juror 22's

5

statements "would not prejudice the other jurors' ability to fairly and impartially consider the evidence in this case." There is nothing in the record to show that the statements of Jurors 9 and 22 had but a passing, inconsequential effect on the remaining prospective jurors.

Even if the combined statements inferred guilt, the district court's instructions adequately directed the jury and cured any possible prejudicial impact. At the conclusion of voir dire, the district court instructed: "[t]he law requires that your decision be made solely upon the evidence before you. Neither sympathy nor prejudice should influence you in your deliberations." The district court instructed the jury to consider only the evidence admitted during trial which consisted of witness testimony, exhibits, and stipulated or admitted facts. The district court instructed the jury to follow all the court's instructions and to wait until deliberations to discuss and decide the case with other jurors. These instructions were given again before the jury deliberated.

The *Ellington* Court expressly noted that "the impaneled jurors were instructed at the end of voir dire that they were to decide the case only based on the evidence presented in the courtroom. They were again instructed of this duty before their deliberations." *Ellington*, 151 Idaho at 69, 253 P.3d at 743. We presume that the jury follows the district court's instructions. *See Kilby*, 130 Idaho at 751, 947 P.2d at 424; *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996).

Hammer has not alleged or shown that any juror was influenced by the statements, and thus, was biased or prejudiced. Consequently, Hammer has failed to overcome the presumption that the impaneled jurors were impartial or that they followed the district court's instructions which ameliorated any potential prejudicial effect. Accordingly, individually or in combination, any effect the statements from the prospective jurors had, or reasonably may have had in relation to the evidence presented, was minimal and did not have a continuing impact. Thus, the district court did not err in denying the motion for a mistrial.

## IV.

## CONCLUSION

The district court did not err by denying Hammer's motion for mistrial. Therefore, we affirm the district court's denial of Hammer's motion for mistrial as well as Hammer's judgment of conviction.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.

6