**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50070**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | )   **Filed: December 5, 2024** |
| Plaintiff-Respondent, | ) |
| | )   **Melanie Gagnepain, Clerk** |
| v. | ) |
| | )   **THIS IS AN UNPUBLISHED** |
| MICHAEL DAVID STOKER, | )   **OPINION AND SHALL NOT** |
| | )   **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

Judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Michael David Stoker appeals from the judgment of conviction after a jury found him guilty of possession of a controlled substance. Stoker argues the district court abused its discretion by allowing irrelevant, propensity, and character evidence to be introduced during trial in violation of the Idaho Rules of Evidence. The State argues the evidence was properly admitted to demonstrate Stoker's knowledge that the substance he possessed was a controlled substance, but even if improperly admitted, the error was harmless. We affirm the judgment of the district court.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Stoker was charged with possession of a controlled substance, Idaho Code § 37-2732(c)(1). Prior to trial, Stoker filed two motions in limine. The first motion sought to prohibit the State from playing any of the body camera footage that included Officer Rivera's conversation with Samantha Jones, Stoker's companion on the night of his arrest, arguing evidence about Jones's prior

1

methamphetamine use was irrelevant to the charges pending against Stoker. Stoker's second motion sought to prohibit any testimony and body camera footage of a prior encounter between Stoker and Officer Rivera on the basis that it would be improper character and propensity evidence.

The day before trial, the State filed a notice of intent pursuant to I.R.E. 404(b) to introduce evidence of Stoker's prior encounter with Officer Rivera. After the jury had been selected, the district court took up all motions. The district court denied the first motion in limine and permitted the body camera footage of Officer Rivera's interaction with Jones to be presented to the jury, instructing defense counsel to utilize cross-examination and jury instructions to limit any potential prejudicial effect. However, the district court granted the second motion in limine and prohibited the State from using sections of the video or direct testimony during the State's case-in-chief to introduce information about the prior encounter between Stoker and Officer Rivera.

The district court then recessed and reviewed the video, State's Exhibit 1, footage from Officer Rivera's body camera. That footage depicted the following: Stoker and his passenger, Jones, were parked at a gas station. As Officer Rivera approached, he activated his body camera which recorded the encounter with Jones and with Stoker. Officer Rivera approached Stoker's vehicle, told Stoker that his registration tags were expired, and asked for his driver's license. Stoker provided a driver's license, but the license was expired. Officer Rivera told Stoker that he could not drive. Officer Rivera asked Jones for her driver's license. Jones told Officer Rivera that she was not licensed to drive. Officer Rivera suggested Stoker and Jones contact a licensed driver for a ride. During the interaction, Officer Rivera learned from dispatch that Jones was on probation; Jones admitted to Officer Rivera that she relapsed with methamphetamine a few weeks prior to the stop. Officer Rivera asked to search the vehicle to which Stoker consented. Stoker stepped out of the vehicle and told Officer Rivera that he had syringes on him for his diabetes. Stoker gave Officer Rivera consent to remove the two syringes from Stoker's front right pocket. Officer Rivera asked permission to search Stoker's other pocket and Stoker gave consent. Eventually, Officer Rivera found a baggie that was sticking out of Stoker's right front coin pocket. Stoker explained that he picked the baggie up earlier because he "knew what it was about" and was concerned about kids finding the baggie. During Officer Rivera's encounter with Stoker, Officer Rivera references a prior encounter between himself and Stoker. Ultimately, Officer Rivera arrested Stoker for possession of methamphetamine.

2

After the district court reviewed Officer Rivera's body camera video, the court revised its order and allowed Officer Rivera's body camera footage to be admitted but prohibited any testimony about the previous encounter between Officer Rivera and Stoker, unless the defense opened the door. Rivera's body camera footage was introduced and published to the jury over Stoker's objections. The jury found Stoker guilty of possession of a controlled substance, amphetamine, and the district court imposed a unified sentence of five years, two years determinate. Stoker appeals.

## II.

## STANDARD OF REVIEW

The decision whether to admit evidence at trial is generally within the province of the trial court. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012). A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the

3

jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

### III.

### ANALYSIS

Stoker makes two claims on appeal. First, Stoker contends the district court abused its discretion by admitting sections of Officer Rivera's body camera footage that evidenced Jones was on probation for methamphetamine, had a prior conviction for methamphetamine, and had relapsed on methamphetamine a couple of weeks prior to the incident, which Stoker argues was irrelevant to his charged conduct. The State argues Jones's statements were relevant to show Stoker's knowledge that the substance he possessed was likely a controlled substance because Jones's use provided context to the encounter. Additionally, the State argues the evidence was relevant to show Stoker's knowledge and intent because he was with Jones, and her admitted drug use made it more probable that Stoker had knowledge that the baggie contained a controlled substance. Second, Stoker contends the district court abused its discretion by admitting parts of Officer Rivera's body camera footage referencing a prior encounter between Officer Rivera and Stoker where Stoker was in possession of a spoon. Stoker argues the video presented improper character and propensity evidence which resulted in undue prejudice. The State argues the district court did not abuse its discretion in permitting the body camera footage that referenced the prior encounter and the spoon because it did not provide prejudicial details regarding Stoker's prior drug use. Alternatively, and as to both alleged errors, the State argues the probative force was minimal, and thus, any error was harmless.

4

**A.      Evidence of Jones's Probation Status and Prior Use of Methamphetamine**

On appeal, Stoker argues the body camera footage of Officer Rivera's conversation with Jones about her probation status and use of drugs is not relevant and any potential relevance is outweighed by the prejudicial effect. Stoker contends the video of Officer Rivera's conversation with Jones did not provide any context to the encounter because Jones's interview occurred out of Stoker's presence, Stoker's body language and demeanor are not visible, and nothing in the conversation was relevant to Stoker's situation. Stoker further argues I.R.E. 401 does not permit irrelevant evidence to be admitted just to show the whole picture. Even if admissible, Stoker argues the video is more prejudicial than probative. The State contends the admission of the body camera footage containing Jones's statements was relevant to demonstrate Stoker's knowledge of the substance in the baggie and to provide context for the entirety of the encounter between Stoker and Officer Rivera. Further, the State argues that even if the admission of Jones's statements was erroneous, the error was harmless because of Stoker's own statements to the officers.

The district court considered the motion in limine to prohibit or limit the body camera footage regarding Jones's statements and ultimately decided the video was more probative than prejudicial. The court held that, while prejudicial concerns about Jones's statements were present, Stoker would be given wide latitude for cross-examination and an opportunity to offer an explanation. The court also suggested Stoker could address the concern through a jury instruction.

We first address the State's argument that Jones's statements are relevant because they have a tendency to make it more probable than not that Stoker knew the baggie in his pocket contained a controlled substance. At trial, the prosecutor argued the entire video should be admitted so the State did not have to continuously start and stop the video, which could "create the potential for a mistrial." The prosecutor further explained that the relevance of playing the entire video was "that it gives the jury the whole picture." The prosecutor also explained that if it had to redact the statements from Jones, the jury would view the evidence "in a piecemeal fashion" which would be "weird to a juror." Finally, the prosecutor explained that playing all of Officer Rivera's body camera footage would allow the jury to see Stoker's demeanor and show that Stoker was very cooperative and not antagonistic. However, the prosecutor did not argue that the conversation between Officer Rivera and Jones was relevant to show Stoker's knowledge that the baggie he possessed contained a controlled substance. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271,

275, 396 P.3d 700, 704 (2017). Thus, the argument that the conversation with Jones is relevant to Stoker's knowledge is not preserved for appeal and we decline to address unpreserved arguments.

### 1. Context or whole picture

The Idaho Supreme Court rejected the propriety of introducing evidence to provide context or the whole picture in *State v. Kralovec*, 161 Idaho 569, 388 P.3d 583 (2019), when the Court held that the *res gestae* doctrine was no longer a basis on which to admit evidence. *Kralovec*, 161 Idaho at 573, 388 P.3d 587. The State acknowledges that, in this case, "to the extent the prosecutor's reference to the 'whole picture' implicates the *res gestae* doctrine, the doctrine is no longer applied in Idaho." The State does not cite any other authority that would permit the evidence to be admitted for the purpose of showing "the whole picture." A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). The district court erred in admitting the portion of the video relating to Jones's statement on this basis.

### 2. Inability to redact

Nothing in the rules of evidence permits evidence to be admitted simply because redacting parts of the evidence may be difficult. Moreover, on appeal, the State concedes this reason is not a basis to admit the video. Thus, to the extent the district court implicitly found the evidence would be too difficult to redact and, thus, should be admitted, that finding is in error.

### 3. Demeanor

The portion of the body camera footage involving Jones is not relevant to Stoker's demeanor because Stoker is not visible in the video during Officer Rivera's discussion with Jones. Thus, we cannot see Stoker's reactions (or lack thereof) as a result of Jones's answers to Officer Rivera's questions. Because Stoker's demeanor during this time is not visible, the challenged portion of the video does not make it more or less likely that Stoker behaved in a particular way. As a result, the district court erred when it admitted the portion of the video containing Officer Rivera's and Jones's discussion because it was not relevant for any of the reasons proffered by the State.

However, whether the district court erred in admitting the evidence does not end the analysis. We must next determine whether the error was harmless in light of the other evidence admitted at trial. In weighing the error of admitting Jones's statements, any error is harmless because the probative force of the statements is minimal.

6

During the jury trial, the State presented a video of Officer Rivera's body camera recording of his conversation with Stoker at the scene. In the video, Stoker stated:

> I found [the baggie] actually on the ground. I'm not shitting you, yeah, I found it on the ground and picked it up because I don't want kids grabbing shit like that, I know what that shit's about, so . . . that's exactly what I did, and I stuck it in my pocket not even thinking.

On the video, Officer Rivera can be seen testing the residue from the baggie, which tested positive as methamphetamine.

Stoker also testified at trial. At trial, Stoker testified on direct examination about finding the baggie:

| | |
|---|---|
| Stoker: | Okay. I was walking with the kids, neighbor kids and my own. We were walking into Walgreens. And as we were walking, I saw it on the ground. And one of my kids was going for it, I said, don't pick that up. I grabbed it up, put it in my pocket, didn't even think twice about it, you know, I don't want the kids grabbing it, because I didn't know exactly what it was, but I knew drug baggies, but I don't know, you know-- |
| Defense Counsel: | Did you inspect it, or did you just pick it up? |
| Stoker: | I just picked it up and threw it in my pocket. Didn't even think to look at it. |
| . . . . | |
| Defense Counsel: | Okay. We heard the quote you "knew what that shit was about"? |
| Stoker: | Um-hum. |
| Defense Counsel: | Was that--what were you referring to? |
| Stoker: | I was just referring to drug paraphernalia in general. |
| Defense Counsel: | Okay. |
| Stoker: | Yeah. Baggies are used for drugs or carrying drugs or whatever so--that's what I was in reference to on that. |
| Defense Counsel: | Okay. Did you ever tell the officer that you knew it was methamphetamine? |
| Stoker: | No, I never did. |
| Defense Counsel: | When you picked up the bag, did you ever see anything in it? |
| Stoker: | No, I did not. It looked clear to me as I was picking it up, but, of course, I had to take a hard look. |

On cross-examination, Stoker again confirmed his knowledge:

| | |
|---|---|
| Prosecutor: | Okay. So if we believe your story then about a baggie that may or may not have had anything in it, because you couldn't see anything in it, but you were fearful that your kids were going to pick it up, so you picked it up? |

| | |
|---|---|
| Stoker: | Yes, sir. |
| Prosecutor: | Even though you couldn't see anything in it? |
| Stoker: | No, I just didn't know. And that's why I didn't want my kids touching it is because I didn't know--I know about drugs, you know. For me, I'm addicted to opiates right now, sir, so I know how bad drugs are. |

Stoker, through his own testimony, explained that when he picked up the baggie, he understood what it likely contained, but nonetheless he placed it into his pocket.

A jury could reasonably infer from this evidence that Stoker knew what the baggie contained, and he possessed it by placing it in his pocket. Thus, weighing the probative force of the record as a whole, while excluding the inadmissible portion of the Officer Rivera's video interaction with Jones, and at the same time comparing it against the probative force of the error, the probative force of Jones's statements was minimal. As a result, any error in admitting the portion of the video related to Jones's statements was harmless.

**B.      Evidence of Stoker's Previous Encounter with Officer Rivera**

Stoker next argues the district court abused its discretion by allowing the State to present evidence about a prior interaction Stoker had with Officer Rivera involving heroin residue on a spoon. Stoker argues the State failed to provide adequate advance notice of its intent to introduce the evidence in violation of I.R.E. 404(b)(2)(B) and, regardless of the lack of notice, the evidence was not admissible under I.R.E. 404(b) and I.R.E. 403. Stoker argues the introduction of the prior interaction amounts to impermissible character evidence and the State failed to demonstrate the evidence was admissible for non-propensity purposes. Stoker asserts that the error was not harmless.

The State argues that pursuant to I.R.E. 404(b)(2)(A), the notice of intent to use the prior bad acts evidence was reasonable because, even though the notice of intent was filed on the eve of trial, the video in question had been available to all parties for more than a year and the prosecutorial burden was only to provide notice of the general nature of the evidence the prosecutor intended to offer at trial. Despite that, the State essentially concedes that the references in the video to a spoon were not admissible pursuant to I.R.E. 404(b). Nonetheless, the State argues that even if it was error to introduce Stoker's prior encounter about drug use, the error was harmless.

The district court considered the second portion of Officer Rivera's video regarding Stoker's and Officer Rivera's prior interaction. The court ruled the video could be played in whole because the charged crime is a general intent crime and, therefore, direct evidence and inferences

from circumstances is relevant for the jury to consider. The court pointed to the conversations with Officer Rivera during the encounter and on the way to the jail about what Stoker thought was in the bag as being relevant, and the court acknowledged it was likely prejudicial, but found the probative value outweighed the prejudicial effect. The district court agreed with the State that trimming the video to exclude Officer Rivera's statements about the prior encounter would be difficult because it was intertwined with the stop and the search. The court also determined, however, that the State could not introduce any testimony about the prior bad act during direct examination but could only address it if the door was opened on cross-examination. The district court admitted the entirety of the body camera footage, determining it was more probative than prejudicial.

On appeal, because the State concedes the evidence was not admissible, we need not address whether the I.R.E. 404(b) notice provided the day before trial was reasonable. Additionally, as previously discussed, the argument that the evidence was properly included because of the difficulty of redacting is unpersuasive. Thus, we assume for purposes of this appeal, that the evidence of Stoker's prior possession of a spoon was erroneously admitted. The analysis then focuses on whether the erroneously admitted evidence, when weighed against the entirety of the untainted evidence, was harmless.

In Officer Rivera's body camera video, Officer Rivera located a baggie in Stoker's pocket; Officer Rivera performed a test on the substance in the baggie, which tested positive for amphetamine. As previously described, Stoker, during his direct examination, indicated he understood what the baggie possibly contained. Although there was no reference in Officer Rivera's body camera video to heroin, on direct examination, Stoker acknowledged that he had a previous interaction with the officers and, at the time, he possessed a spoon with heroin on it. On cross-examination, Stoker was then asked about the prior interaction with Officer Rivera, his opiate addiction, his association with other drug users, and whether he knew of individuals who use both heroin and methamphetamine. The evidence regarding Stoker's prior encounter with Officer Rivera resulted in a series of questions and explanations about Stoker's history of prior drug use. The jury could compare Stoker's statements in the video to his testimony at trial. At trial, Stoker attempted to minimize the statements in the video while also offering detailed explanations about his knowledge and familiarity with controlled substances.

Stoker argues that because of the extreme prejudicial effect of the video, he had to testify to "attempt to mitigate the damage done by the error," but nothing in the record supports this argument. Moreover, a harmless error analysis requires review of the actual evidence presented at trial, not speculation about what evidence may have been presented in the absence of an alleged error. *See State v. Yager*, 139 Idaho 680, 687, 85 P.3d 656, 663 (2004) (holding that "because of the overwhelming evidence of Yager's guilt and the *de minimus* and cumulative nature of the evidence recovered in the search that was actually admitted at trial (the two citations)," the alleged error did not contribute to the conviction and was harmless beyond a reasonable doubt).

The video contained a reference to a prior encounter between Officer Rivera and Stoker where Stoker possessed a spoon and some cotton; nothing in the video indicated Stoker possessed heroin. It was Stoker who presented the jury with evidence that the spoon referenced in the prior encounter contained heroin residue and that he continued to use controlled substances.

On direct examination, defense counsel asked Stoker what Officer Rivera found during the previous encounter, to which Stoker replied, "he had found a spoon on me." Counsel then asked:

| Defense Counsel: | All right. And what was on that spoon? |
| --- | --- |
| Stoker: | Heroin. |
| Defense Counsel: | Okay. So do you use heroin? |
| Stoker: | I did at one time, yes. |
| Defense Counsel: | Okay. And why were you using heroin? |
| Stoker: | I ran out of my oxyies, and I'll do that as a supplement because they're too expensive on the road, oxyies are. |
| Defense Counsel: | Do you take oxyies now? |
| Stoker: | Yes, I do. I still do, yes. |

Thus, it was Stoker, not the State, who presented the evidence that Stoker possessed heroin and continued to use illegal drugs. For purposes of weighing the evidence, even if we exclude the challenged portions of the video and the questions and answers about the prior encounter, the jury still heard Stoker's statements at the scene evincing his knowledge of and familiarity with controlled substances. When comparing the record as a whole, excluding the erroneously admitted evidence about Stoker's prior possession of a spoon, and comparing it to the probative force of the error, the effect was minimal and, thus, harmless beyond a reasonable doubt.

## IV.

## CONCLUSION

The district court abused its discretion in admitting the portions of Officer Rivera's body camera footage that showed the officer's discussion with Jones. The district court also abused its

discretion by admitting the portions of Officer Rivera's body camera footage that showed the officer's comments regarding a prior encounter with Stoker. However, the errors were harmless when weighed against the probative value of the untainted evidence. We affirm the judgment of the district court.

Judge LORELLO and Judge TRIBE **CONCUR**.